## IN THE OREGON TAX COURT

## DOVE LEWIS MEMORIAL EMERGENCY VETERINARY CLINIC, INC.

*v.*

## DEPARTMENT OF REVENUE

(TC 2086)

Kirkham E. Hay, Benson, Arenz, Lucas, Davis & Hay, Portland, represented plaintiff.

Dave L. Canary, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered January 30, 1985.

**EDWARD H. HOWELL, Judge Pro Tem.**

The plaintiff appeals from the defendant's denial of its application for property tax exemption for tax year 1981-1982. The plaintiff asserts that the subject property, an emergency veterinary clinic, should be exempt from taxation pursuant to ORS 307.130 which allows a tax exemption for incorporated charitable institutions.

The plaintiff was founded in early 1973 by a cash donation from A. B. Lewis in memory of his wife for the purpose of offering emergency care for dogs, cats and other small animals in the Portland metropolitan area when regular

veterinary clinics were closed. The corporation is governed by five directors elected from membership in the Portland Veterinary Medical Association who serve without pay.

The plaintiff's bylaws provide that in the event of dissolution the assets shall be transferred to another similar charity. The plaintiff is open from 6 p.m. to 8 a.m. Monday through Thursday, from 6 p.m. Friday through the weekend, and 24 hours per day on holidays when other veterinary clinics are normally closed. The plaintiff operates in a fashion similar to a hospital emergency room. The injured animals are brought to the clinic, given emergency treatment, and referred to other veterinarians for any subsequent follow-up care. The plaintiff advertises in the local yellow pages like other veterinarians and charges fees for the treatment. Discounted fees are given to senior citizens and animal protection organizations. The clinic provides free service to the Audubon Society and has a contract to provide treatment at a fee of $15 per animal for injured animals picked up by the Multnomah County Animal Control Department. During the day, the Department takes injured animals to local veterinarians who provide treatment at no charge to the county.

The Internal Revenue Service granted plaintiff a nonprofit status in February 1974 and allowed an exemption from federal income taxation under Section 501(c)(3) of the Internal Revenue Code.

The plaintiff's business administrator testified that the plaintiff employed five full-time veterinarians who each averaged $2,500 to $3,000 per month, eight technicians, a manager and a secretary besides the administrator. Testimony was adduced that services were not free, that payment was expected when services were rendered and that the fees were structured to cover costs but that an animal would get treatment even if its owner were indigent.

The clinic offers an internship program for on-the-job veterinary students from Portland Community College and Oregon State University. Testimony was received that in the beginning of plaintiff's operation, charges were approximately the same as private veterinary clinics and wages of the veterinarians were similar in both operations.

The plaintiff made a profit in 1980 and for seven

years prior thereto the plaintiff had surpluses which were applied to buy land and build the subject property.

■ In *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 309-310, 360 P2d 293 (1961), in relation to the eligibility of an apartment and infirmary for the elderly for an exemption as a charitable institution, the Supreme Court set forth several criteria for consideration:

> "Such review reveals that weight has been accorded to the presence or absence of the following facts, that is: (1) Whether the receipts are applied to the upkeep, maintenance and equipment of the institution or are otherwise employed [citations omitted]; (2) Whether patients or patrons receive the same treatment irrespective of their ability to pay [citations omitted]; (3) Whether the doors are open to rich and poor alike and without discrimination as to race, color or creed [citations omitted]; (4) Whether charges are made to all patients and, if made, are lesser charges made to the poor or are any charges made to the indigent [citations omitted]; (5) Whether there is a charitable trust fund created by benevolent and charitably-minded persons for the needy or donations made for the use of such persons [citations omitted]; (6) Whether the institution operates without profit or private advantages to its founders and the officials in charge [citations omitted]."

■ Another test is whether the government would be required to spend tax money to do the same job if the plaintiff did not do it. *Friendsview Manor v. Tax Com.*, 274 Or 94, 420 P2d 77, 427 P2d 417 (1967).

There was evidence that fees were used to maintain the facility, that animals would be treated although the owner could not pay, that it is a benefit to the public to have an emergency clinic available for care of injured animals, that donations are received and that no charges are made to the Audubon Society and reduced charges made to others.

On the other hand, there was evidence that a normal fee of $30 was charged and that such fee was comparable to fees charged by other veterinarians, that plaintiff charges the County Animal Control $15 per animal and other veterinarians do not charge the county. Thus, it appears that plaintiff is not relieving the county of any financial burden. Plaintiff advertises its emergency care and other veterinarians also advertise and provide emergency care. Plaintiff made a profit

in 1980; in other years funds received were used to maintain the clinic and buy equipment. The veterinarians on the staff received salaries comparable to other practicing veterinarians.

Except for the nonprofit provision in plaintiff's bylaws, the plaintiff's facility seems to operate generally the same as other veterinary facilities in the area. It is this court's conclusion that plaintiff is not entitled to a tax exemption as a charitable corporation. The order of the Department of Revenue is affirmed.