DECISION
This matter is before the Court on cross-motions for summary judgment. The parties stipulated to the material facts and briefing closed May 27, 2008. The issue is whether Plaintiff qualifies for charitable property tax exemption under ORS 307.130[1] for tax year 2007-08. Plaintiff is represented by Brian M. Thompson, Attorney at Law, Eugene, Oregon. Defendant is represented by Scott A. Norris, Assistant County Counsel, Marion County.
 I. STATEMENT OF FACTS
The parties agree to the following stipulated facts. Plaintiff was incorporated under the Oregon Nonprofit Corporation Act on April 30, 2007. Plaintiff filed its application for ad valorem property tax exemption on June 19, 2007. Defendant denied the application by letter dated September 7, 2007. Plaintiff filed the instant appeal on November 28, 2007. The *Page 2 
Exemption Application was denied based upon Defendant's interpretation of OAR 150-307.130-(A)(3)(b), [2] as that rule is discussed inGrantmakers for Education v. Multnomah County Assessor, TC-MD No 021216E, WL 22119790 (Aug 21, 2003) (Grantmakers).
Plaintiff is a Local Workforce Investment Board operating under the Workforce Investment Act of 1998. Plaintiff derives its funding almost solely from government sources pursuant to federal and state programs. The majority of Plaintiff's funding comes from the State of Oregon, which in turn receives the majority of the funds that it distributes to Plaintiff from the U.S. Department of Labor. Plaintiff's funds are subject to agreements with the funding governmental entities. The contracts between Plaintiff and the respective governmental entities prohibit Plaintiff from using any funds received under the contract for anything other than the specific services set out in the respective contracts. (Stip Facts at 2.) Federal regulations prohibit Plaintiff from expending for administrative purposes more than 10 percent of total funds received. (Ptf's Mot for Summ J at 4) (hereinafter Ptf's Br.)
Plaintiff does not provide services directly to individuals. Instead, Plaintiff contracts with service providers who provide the services, in accordance with 29 USC § 2832(d)(2)(A-D). (Stip Facts at 2.) Those contracts are generally awarded to service providers on a competitive basis. However, some contracts are established with governmental agencies on a cooperative basis.
The services provided by the service providers to all adults include: outreach, intake (which may include worker profiling) and orientation to the information and other services available through the one-stop workforce delivery system; initial assessment of skill levels, *Page 3 
aptitudes, abilities, and supportive service needs; job search and placement assistance, and where appropriate, training and career counseling, pursuant to 29 USC 2864(d)(2)(B-D).
The services provided by the service providers to adults and dislocated workers may also include: comprehensive and specialized assessments of the skill levels and service needs of adults and dislocated workers, which may include: diagnostic testing and use of other assessment tools; in-depth interviewing and evaluation to identify employment barriers and appropriate employment goals; group counseling; individual counseling and career planning; short-term prevocational services (including development of learning skills, communication skills, interviewing skills, punctuality, personal maintenance skills, and professional conduct, to prepare individuals for unsubsidized employment or training), as provided in 29 USC 2864(d)(3)(C).
Plaintiff prepares its own budget and determines the proper distribution of funds within its local area, pursuant to29 USC 2832(d)(3)(B)(i)(III). The service providers do not have discretion with regard to whom they serve, how they serve them, nor with the allocation of funds among them.
The service providers provide services free of charge to qualified persons, as required by 29 USC 2832. Finally, the service providers are required to achieve a specific set of outcomes and report the results to Plaintiff as required by 29 USC 2832(d)(4).
Defendant denied Plaintiff's exemption application on the basis that OAR 150-307.130-(A)(4)(b), as interpreted in the Grantmakers case, requires an applicant for the charitable exemption to be the one providing charity directly to the recipients of the charity. (Def's Reply to Ptfs' Resp to Def's Mot for Summ J, at 1, 2) (hereinafter Def's Reply). Defendant's exemption application denial letter provides in part: *Page 4 
 "Your organization's purpose is to locally administer the program as defined in the Workforce Investment Act of 1998. Your duties include development and coordination of a local workforce plan selection of third parties who deliver programs and services. You provide a pass through of funding to these third party providers and monitor the programs for compliance to federal and local rules. The Workforce Investment Act prohibits you from providing direct services to any individual.
 "It is our opinion that your organization is not charitable as defined by ORS 307.130 and OAR 150-307.130. Your application for exemption is denied."
(Ptf's Compl, Ex 1 at 1.)
 II. ANALYSIS
The issue in this case is whether Plaintiff is entitled to a property tax exemption under ORS 307.130 as a charitable institution. The parties agree that Plaintiff meets the organizational requirements of subsection (2) of applicable administrative rule, OAR 150-307.130-(A).[3] The particular dispute is over whether Plaintiff satisfies the requirements of subsection (4)(b) of the administrative rule, which provides in relevant part:
 "The activity conducted by the charitable institution must be for the direct good or benefit of the public or community at large. Public benefits must be the primary purpose rather than a by-product. An organization that is established primarily for the benefit of its members, is not a qualifying charity."
OAR 150-307.130-(A)(4)(b).
Plaintiff insists that it satisfies the rule's requirement and is entitled to exemption because the activities it conducts are for the direct good or benefit of the public or community at large, and public benefits are Plaintiff's primary purpose rather than a byproduct. (Ptf's Br at 3.) Plaintiff argues that it contracts with service providers to provide services to its charitable recipients as a Workforce Investment Board, providing funding for various workforce *Page 4 
improvement activities in accordance with federal law, activities "that increase the employment, retention, and earnings, of participants, and increase occupational skill attainment by participants, and, as a result, improve the quality of the workforce." (Ptf's Br at 2, 3.) Additionally, Plaintiff controls the distribution of the funds and monitors the results of the service providers, expending only 10 percent of its state and federal funding for its own administrative purposes, and distributing the remaining 90 percent to service providers in Marion, Yamhill, and Polk Counties. (Id. at 4.)
Defendant argues that Plaintiff does not qualify because "the organization must itself provide charity directly to the recipients, and not act through third parties, in order to qualify for tax-exempt status." (Def's Resp to Ptf's Mot for Summ J and Cross-Mot for Summ J at 1) (hereinafter Def's Resp and Cross Mot.)
The burden of proving entitlement to an exemption is on the person claiming the exemption. In analyzing exemption cases, the court is guided by the principle that taxation is the rule, and exemption from taxation is the exception. Dove Lewis Mem. Emer. Vet. Clinic v. Dept. ofRev., 301 Or 423, 426-27, 723 P2d 320 (1986). Courts are to interpret exemption statutes with a strict, yet reasonable construction to achieve the legislature's intent. SW Oregon Pub. Def. Services v. Dept. ofRev., 312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." North Harbour Corp. v. Dept. of Rev., 16 OTR 91, 95 (2002).
Looking particularly at the operative words of the rule over which the parties focus their dispute, Plaintiff's activities must be "for the direct good or benefit of the public or community *Page 5 
at large." (Def's Resp and Cross Mot at 5.) Defendant argues that Plaintiff fails to meet that requirement because Plaintiff is merely a funding source, not a provider of the charity itself, serving as a pass-through for federal funds destined for third parties. (Id. at 6.) Defendant contends that "[t]he point of Grantmakers is not who controls the money, but who provides the charity," and because Plaintiff does not provide charity directly to the recipients, it does not qualify for the exemption. (Def's Reply at 2.)
The court believes Defendant misinterprets the rule and misconstruesGrantmakers. Contrary to Defendant's assertion, the distinction in the rule is not between direct and indirect benefit to the public, but whether the benefit provided is for the direct good or benefit of the public rather than primarily for the benefit of the organization's members, or simply a by-product of the organization's primary activity. The rule provides: "[p]ublic benefits must be the primary purpose rather than a by-product. An organization that is established primarily for the benefit of its members, is not a qualifying charity." OAR 150-307.130-(A)(4)(b). The rule goes on to provide an example of a nonqualifying organization: "a rifle club formed primarily for the pleasure of its members [that] also provides safety information and instruction[,]" presumably to the public. The organization in the rule's example fails to qualify for the exemption because "the club's primary purpose is not to provide a direct benefit to the public[,]" but rather to its own members. In this case, Plaintiff's only benefit is to the public or community at large. The service providers with whom Plaintiff contracts are not the object of Plaintiff's charity, nor are they the ones who directly benefit from Plaintiff's activities.
The plaintiff in Grantmakers was a nonprofit corporation organized to educate a network of philanthropic and charitable organizations about achieving greater efficiency in their giving to public education. TC-MD No 021216E at 1. Grantmakers was a membership organization and *Page 6 
the primary recipients of the plaintiff's services were paying members who paid for assistance in improving their philanthropic and charitable endeavors. Id. at 1. The plaintiff in Grantmakers assisted philanthropists in maximizing their giving to public education by providing conferences, seminars, newsletters, reports and research, and networking opportunities. Although the court noted that "[p]laintiff does not work directly with the public education system nor does it give directly to the public education system," the court found it significant that "[p]laintiff's activities are all directed at foundations," who were the primary recipients of its activities, and that the public education system benefited only "indirectly" by the plaintiff's activities because "it is ultimately up to the foundations where and how to distribute their money." Id. at 4, 5. A key distinction betweenGrantmakers and the case at bar is that the member organizations inGrantmakers paid the plaintiff for advice on how to operate more efficiently, but it was ultimately up to the foundations to determine where and how to distribute their money. The members in that case were the primary beneficiaries. Here, on the other hand, Plaintiff provides government funding to qualifying organizations that, in turn, provide workforce enhancement activities to qualifying individuals free of charge. Plaintiff is more than merely a funding source, although funding alone may be sufficient. Plaintiff dictates whom the service providers serve, how they serve them, and then monitors their activities to ensure that the service providers achieve a specific set of outcomes. Public benefits are Plaintiff's "primary purpose rather than a by-product[,]" and Plaintiff is not "established primarily for the benefit of its members." OAR 150-307.130-(A)(4)(b). As the court noted in Oregon StampSociety v. Comm., 1 OTR 190, 204, WL 81 *6 (1963), "if this principal * * * activity is performed on a charitable basis for the benefit of others and not primarily for the benefit of its own members then, the exempt character required of the institution under ORS 307.130 exists." *Page 7 
The court concludes Plaintiff is involved in charitable work. There is no evidence that Plaintiff's property is not "actually and exclusively occupied or used" in the charitable work Plaintiff carries on. ORS307.130(1)(a). Moreover, Plaintiff satisfies the three requirements set forth by the Oregon Supreme Court in SW Oregon Pub. Def. Services,312 Or 82, 89. Plaintiff: (1) "ha[s] charity as its primary, if not sole, object"; (2) "[is] performing in a manner that furthers its charitable object"; and (3) its "performance * * * involve[s] a gift or giving."Id. Because Plaintiff's work is for the direct good and benefit of the public, with public benefit as its primary purpose and not merely a by-product, and there being no evidence or indication Plaintiff exists primarily to benefit its own members, the court concludes Plaintiff does qualify for the charitable property tax exemption under ORS 307.130.
 III. CONCLUSION
For the reasons set forth above, the court concludes that Plaintiff does qualify for the charitable property tax exemption for the 2007-08 tax year under ORS 307.130, in that Plaintiff's activities are for the direct good and benefit of the public or community at large, as required by OAR 150-307.130-(A)(4)(b). Now, therefore, *Page 8 
IT IS THE DECISION OF THIS COURT that Plaintiff's Motion for Summary Judgment is granted and Defendant's Response to Plaintiff's Motion for Summary Judgment and Cross-Motion for Summary Judgment is denied.
Dated this ___ day of November 2008.
[1] All references to the Oregon Revised Statutes (ORS) are to 2005.
[2] All references to the Oregon Administrative Rules (OAR) are to 2006. Accordingly, the disputed provision of the rule is subsection (4)(b), not (3)(b).
[3] OAR 150-307.130-(A)(2) requires that the organization be incorporated, organized as a nonprofit, that it separately account for funds and donations committed to charitable use, that it not operate for the profit or private advantage of the organization's founders and officials, and that the organization's articles of incorporation or bylaws require that its assets be used for charitable purposes upon dissolution. *Page 1