IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ICARE INC.,                                      )
                                                 )
            Plaintiff,                           )        TC-MD 130544D
                                                 )
      v.                                         )
                                                 )
JOSEPHINE COUNTY ASSESSOR,                       )
                                                 )
            Defendant.                           )        **FINAL DECISION**

This Final Decision incorporates without change the court's Decision entered September 8, 2014. The court did not receive a request for an award of costs and disbursements within 14 days after its Decision was entered. *See* TCR-MD 19.

Plaintiff appeals Defendant's revocation of Plaintiff's property tax exemption, dated September 9, 2013, for the 2013-14 tax year. A telephone trial was held on July 14, 2014. David E. Carmichael, attorney, appeared on behalf of Plaintiff. Jeffrey and Carol Shelton,[1] and Bob Woodhead (Woodhead), retired real estate broker and former retreat center board member, testified on behalf of Plaintiff. Leah Harper, Assistant County Counsel for Josephine County, appeared on behalf of Defendant. John McCafferty (McCafferty), Chief Deputy Assessor for Josephine County, testified on behalf of Defendant.

Plaintiff's Exhibits 1 to 4, 9 to 15, 20, 21, and 24 were received without objection. Plaintiff's Exhibits 5 to 8 and 16 to 18 were received with objection. Plaintiff's Exhibits 19, 22, and 23 were not admitted. Defendant offered no exhibits.

/ / /

---

[1] When referring to a party in a written decision, it is customary for the court to use the last name. However, in this case, the court's decision recites facts and references to two individuals with the same last name, Shelton. To avoid confusion, the court will use the first name of the individual being referenced.

## I. STATEMENT OF FACTS

Jeffrey, Plaintiff's president, testified that Plaintiff is an "Oregon nonprofit 501(c)(3) religious corporation" with its headquarters located in Medford, Oregon, and Plaintiff has conducted ministerial efforts in the United States, Israel, and Mexico. (*See* Ptf's Ex 1 at 1; Ptf's Ex 2 at 8.) He testified that the Internal Revenue Service recognized Plaintiff as "tax-exempt" for federal income tax purposes under Internal Revenue Code section 501(c)(3). (Ptf's Ex 3.) Jeffrey testified that "once [Plaintiff was] involuntarily dissolved" (and subsequently reinstated) by Oregon's Secretary of State for failing to timely file its annual renewal application.

Jeffrey testified that Plaintiff owns property called the "Cascade Mountain Ranch Retreat & Family Support Center" (Ranch) which is approximately 50 acres. (*See* Ptf's Ex 6 at 1; Ex 24 at 1.) According to the Ranch's website, two lodges are situated on the property, and each lodge is approximately 7,000 to 8,000 square feet. (*Id.* at 3.) McCaffferty testified that a chapel is located at the Ranch and public access is limited by a locked gate. Jeffrey testified that the Ranch is run by an all volunteer staff and "unpaid[] administrative team." (*See* Ptf's Ex 13 at 1.)

Jeffrey testified that from 1993 through 2008, the Ranch was exempt from property taxation and its qualifying use was a child care facility for children from troubled homes. (*See* Ptf's Ex 6 at 1-2.) He testified that, in 2008, Plaintiff turned its efforts to "Ministering to the Whole Family," using the Ranch for those efforts. (*See id.* at 2.) Plaintiff filed a "revised application" for property tax exemption on July 28, 2008, and again on October 8, 2008, claiming exemption as a religious organization (ORS 307.140). (Ptf's Compl, Ex 1 at 1.) Jeffrey testified that the Ranch's purpose is specifically for "Christian education, family edification, and evangelism."

/ / /

Jeffrey testified that Plaintiff advertised the Ranch as an "event" location. (*See* Ptf's Ex 24.) He acknowledged that the website described the Ranch as a "vacation" destination. (*See id.*) Jeffrey testified that the website "is only a template to give inquirers initial information" and that the Ranch did not host "vacations." (*See* Ptf's Ex 13 at 1.) He testified that the Ranch hosted reunions, funerals, and weddings because they were part of the "religious process." Jeffrey testified that the Ranch is not a single denomination retreat, but that Plaintiff reaches out to groups of differing faiths, hosting "corporate events or meetings." (*Id.*) He testified that Plaintiff is not a "church."

Jeffrey testified that the Ranch is used to fulfill its community outreach effort. Jeffrey testified that Plaintiff offered "discounts" (below-market rental rates) to those unable to pay the advertised rental rates, including scholarships and complimentary use to religious and nonreligious organizations. (*See* Ptf's Ex 15 at 2.) He testified that some "groups trade off work projects" for no or reduced rent, referencing Hard Hats for Christ.

McCafferty questioned whether Plaintiff was offering a sliding-scale fee structure to its guests. He testified that the Ranch's website made no mention of the sliding scale. In response, Carol testified that the sliding scale was consistently offered, and that it was always "brought up" when Plaintiff received telephone inquiries about the Ranch. She testified that the "average discount" was 40 percent for July 2012 through July 2013 and 22 percent for July, 2013 through February 2014. Carol testified that to reduce the number of inquirers who wanted to take advantage of Plaintiff's generosity, the sliding scale was not advertised.

Defendant questioned whether Plaintiff's rental rates were below-market. Jeffrey testified that the advertised rental rate in 2013 was $750 per lodge per night (30 people equates to $25 per person per night) and that the rate was significantly lower than market rates.

Woodhead testified that similar lodging costs averaged $95 and $70 excluding a meal allowance. Woodhead compared the Ranch to three other properties located in "rural settings" in Turner, Salem, and Silverton, Oregon. McCafferty testified that those properties were not "comparable" to the Ranch and that it was "impossible" to find a comparable property, specifically, "two large houses on acreage."

McCafferty testified that he reviewed Plaintiff's tax exemption because he concluded the Ranch was not a "traditional church retreat center," noting that access was limited by "a locked gate" and during the 154 days the Ranch was rented in "2012-13 [the] secular" use exceeded "the use by religious organizations." McCafferty testified that when religious activities took place at the Ranch they were conducted by the guests, not Plaintiff. He testified that there was no evidence that Plaintiff was using the Ranch for religious purposes. Jeffrey testified that Plaintiff offered the "The Church Family Reunion Devotional & Bible Program" (the Program) to its guests. (*See* Ptf's Ex 20 at 10.) He testified that the Program suggested that the guests could take part in morning and evening "devotionals" and mealtime prayers each day of their vacation. Jeffrey testified that he did not know whether the guests actually held prayer services or morning and evening "devotionals." He admitted that the Program offered recreational activities and off-site day trips.

## II. ANALYSIS

Plaintiff seeks to reinstate the Ranch's property tax exemption for the 2013-14 tax year, alleging that the Ranch is primarily used for the advancement of its religious purposes and

/ / /

/ / /

goals.[2]  ORS 307.140,[3] in pertinent part, provides a property tax exemption for religious organizations:

> " 'Upon compliance with ORS 307.162, the following property owned or being purchased by religious organizations shall be exempt from taxation:
> "(1) All houses of public worship and other additional buildings and property used solely for administration, education, literary, benevolent, charitable, entertainment and recreational purposes by religious organizations, the lots on which they are situated, and the pews, slips and furniture therein.  However, any part of any house of public worship or other additional buildings or property which is kept or used as a store or shop or for any purpose other than those stated in this section shall be assessed and taxed the same as other taxable property."

To qualify for a property tax exemption under ORS 307.140, the subject property's primary use must be the advancement of the religious organization's purposes and goals.  The emphasis is on primary use as contrasted with incidental use of the property.  *See Golden Writ of God v. Dept. of Rev.*, 300 Or 479, 483, 713 P2d 605 (1986) (internal citations omitted).  Plaintiff has the burden of proving that the Ranch's primary use meets the statutory requirements.  *Id*.  In analyzing exemption cases, the court is guided by the principle that taxation is the rule and exemption from taxation is the exception.  *Dove Lewis Mem. Emer. Vet. Clinic v. Dept. of Rev.*, 301 Or 423, 426-27, 723 P2d 320 (1986) (internal citation omitted).

Jeffrey testified that Plaintiff changed the Ranch's primary use in 2008.  After that change in primary use, Plaintiff filed a request for property tax exemption that was granted.  On September 9, 2013, Defendant notified Plaintiff that its "purpose stated in the application [filed October, 2008] 'retreat and chapel for ministry & related family/children mission' is not supported by ICARE's use of the property."  (Ptf's Compl, Ex 2.)

/ / /

---

[2] Because this is an appeal focusing on Plaintiff's use of property located in Oregon, Plaintiff must meet Oregon's statutory requirements and cannot singularly rely on the Internal Revenue Service determination that Plaintiff is a religious organization.

[3] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

To qualify the Ranch for property tax exemption, Plaintiff must prove that the Ranch is primarily used for religious purposes. Jeffrey testified that the primary use of the Ranch is for "Christian education, family edification, and evangelism." Plaintiff offered no evidence that the Ranch is actually used to fulfill its religious purpose. Plaintiff's testimony and evidence focused on the use of the Ranch by others, rather than Plaintiff's use. Jeffrey testified that Plaintiff offers the "The Church Family Reunion Devotional & Bible Program" (the Program) to its guests, but Jeffrey testified that he did know whether groups identified as "church family retreats" or "religious organization retreats" actually used the Program or how any group used the property for religious purposes. Jeffrey testified that Plaintiff does not host "vacations." However, Plaintiff's promotion of the Ranch on its website focuses on how the Ranch is used for recreational purposes and secular events, such as weddings, reunions, and funerals.[4] The website does not mention how the Ranch is used for a religious purpose and Plaintiff offered no evidence. Woodhead testified that Plaintiff rents the Ranch at below-market rates. Jeffrey testified that Plaintiff offers rates on a sliding scale and that Plaintiff runs the Ranch with a volunteer staff. Employing an all volunteer staff, offering below-market rental rates, and offering a sliding-scale rental fee is insufficient evidence to prove that the Ranch is primarily being used for "benevolent, charitable, entertainment and recreational purposes by religious organizations." ORS 307.140(1). Unfortunately, Plaintiff offered no evidence of the Ranch's actual religious use by Plaintiff or groups that it identified as "religious organizations." Plaintiff has the burden of proving that the Ranch is used primarily for religious purposes but failed to do so.

/ / /

---

[4] The court acknowledges that weddings and funerals could be religious events, but Plaintiff provided no evidence showing that the weddings and funerals held on the Ranch were religious services.

### III. CONCLUSION

After careful consideration of the testimony and evidence, the court concludes that Plaintiff failed to meet its burden of proving that the Ranch met the statutory requirements that it was used for religious purposes during the 2013-14 tax year. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this ____ day of September 2014.

_____
JILL A. TANNER
PRESIDING MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Presiding Magistrate Jill A. Tanner on September 25, 2014. The court filed and entered this document on September 25, 2014.*