DECISION
We Care Oregon (Plaintiff) appeals the denial by the Washington County Assessor (Defendant) of its application for a property tax exemption for the 2008-09 tax year.
A trial was held in the Tax Court courtroom, Salem, Oregon on April 2, 2010. Kevin Mannix, Attorney at Law, appeared on behalf of Plaintiff. Jacquilyn Saito-Moore, Assistant County Counsel, Washington County, appeared on behalf of Defendant. Randall Carl (Carl) and Jerry Schmidt, officers of Plaintiff, testified for Plaintiff. Betty O'Rourke (O'Rourke), Senior Administrative Exemptions Specialist, Washington County Department of Assessment and Taxation, testified for Defendant.
Plaintiff offered Exhibits 1 through 4 and 6 through 10, which included information regarding the activities of Plaintiff that was previously not provided to Defendant. Defendant offered Exhibits A through G. The court received all exhibits without objection. The record closed on May 5, 2010. *Page 2 
 I. STATEMENT OF FACTS
A. Nonprofit status and functions of Plaintiff
The majority of the facts are uncontested. Plaintiff is an incorporated nonprofit organization that works to "provide[] quality business assistance to non-profit [clients]." (Def's Ex F at 1.) The Internal Revenue Service approved Plaintiff as exempt for charitable purposes under section 501(c)(3) of the Internal Revenue Code (IRC) in a letter dated December 26, 2006. (Ptf's Ex 4 at 1-2; Def's Ex C at 1-2.) Plaintiff's articles of incorporation state that Plaintiff is incorporated under the Not for Profit Corporation Act of the State of Oregon and that "[t]he Corporation is organized exclusively for charitable * * * purposes, including for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the [IRC.]" (Ptf's Ex 2 at 1; Def's Ex D at 1.)
Upon dissolution, all assets of Plaintiff are to "be distributed exclusively to one or more charitable * * * organizations which would then qualify under * * * Section 501(c)(3) of the [IRC.]" (See
Ptf's Ex 2 at 1; Def's Ex D at 1.) Plaintiff's bylaws expand on this wording by stating specifically that "[u]pon dissolution, all remaining assets must be used exclusively for exempt purposes, such as charitable * * * purposes." (Ptf's Ex 3 at 5.) The charitable object of Plaintiff is stated in its bylaws as "strengthen[ing] faith-based and community organizations that serve people in need by supporting and leveraging public, corporate and private resources." (Ptf's Ex 3 at 1; Def's Ex E at 1.)
The financial summary provided by Plaintiff separates income into direct public support, indirect public support, and program services. (Ptf's Ex 8 at 1.) Carl testified that "direct public support" is cash received in donation form; "indirect public support" is cash received from the sale of donated items; and "program services" are fees received for services provided to *Page 3 
nonprofit clients, including event management, financial consulting, and development and marketing. (Ptf's Ex 8 at 1.)
Additionally, the financial summary of Plaintiff separates expenses into program services, designated program services, management and general expenses, and fundraising. (Id.) Carl testified that "program services" include cash donations provided directly to nonprofit clients as well as the administrative expenses associated with those program services. (Id.) Carl distinguished "designated program services," which similarly include cash donated to Plaintiff, though donations are designated to a particular nonprofit client or type of nonprofit client chosen by the original donor.[1] (Id.)
Plaintiff testified that it occupies the property claimed as exempt as its primary office space in Portland, Oregon. The officers and other employees of Plaintiff work on-site at that property and Plaintiff uses its office space to meet with nonprofit clients and perform business and donation services for those clients. (Ptf's Ex 1 at 1; Def's Ex B at 1.) Business services provided by Plaintiff include event management, financial consulting, and development and marketing. (See Ptf's Ex 8 at 1.) Plaintiff also provides direct cash donations to its nonprofit clients.
B. Nonprofit Clients of Plaintiff and Fees Charged to Clients
All nonprofit clients that receive services or donations from Plaintiff are approved IRC section 501(c)(3) nonprofits. Nonprofit clients that have received assistance in recent years include the Oregon War Veterans Association, which helps the families of veterans and current members of the armed forces; the YWCA Salem Outreach Shelter, which provides for the *Page 4 
humanitarian needs of women; Family Building Blocks, which provides training programs aimed at the prevention of child abuse; and Life Directions, which provides a mentoring program for at-risk teens. (Ptf's Ex 8 at 1; Ptf's Ex 9 at 1.) Nonprofit clients of Plaintiff are not members of Plaintiff and do not pay dues for membership. (Ptf's Compl at 5.)
Regarding fees, Carl testified that: (1) nonprofit clients are not required to pay any membership fees; (2) nonprofit clients do not pay any initial fees for services; (3) Plaintiff provides the majority of its services for free; (4) Plaintiff does not charge fees to its nonprofit clients for its designated program services; and (5) nonprofit clients only pay fees for services when their requests become "cost-prohibitive" to Plaintiff. Carl testified that requests are "cost-prohibitive" when Plaintiff has not received enough charitable donations from other sources to cover the specific requests of its nonprofit clients.
Carl testified that even when nonprofit clients are required to pay fees for services provided, Plaintiff does not usually require payment of those fees until after the nonprofit client has successfully raised funds with the assistance of Plaintiff. Plaintiff charges for approximately twenty percent of its total services provided to nonprofit clients and Plaintiff receives payment for approximately five percent of its total services provided to nonprofit clients. Plaintiff charges fees for its services on a case-by-case basis and does not charge nonprofit clients unless their requests are "cost-prohibitive." Plaintiff does not require any initial fees and Plaintiff does not charge nonprofit clients any fees for cash donations provided by Plaintiff.
C. Procedural History
On April 1, 2008, Plaintiff sent Defendant its application for a charitable property tax exemption for the 2008-09 tax year. (Ptf's Ex 1 at 1.) The application requested the charitable property tax exemption under ORS 307.130 and stated that "[t]he purpose of th[e] organization *Page 5 
[of Plaintiff] is[] to provide business services to non-profit [clients] to enhance their sustainability and viability." (Id.) The first application was marked "timely by US Post Mark" by Defendant. (Id.) Defendant received a second application from Plaintiff on June 13, 2008, that reflected a change of address, phone, and lease information of the Plaintiff. (Def's Ex B at 1.) Defendant marked the second application "LATE FILED" and "New 2008-09." (Id.)
Defendant mailed a letter of denial to Plaintiff on April 23, 2009, stating that Plaintiff was not eligible for a charitable property tax exemption because "[t]he activity conducted is not for the direct good or benefit of the community at large" and "[p]ublic benefit must be the primary purpose rather than a by-product." (Ptf's Ex 6 at 1; Def's Ex A at 1.) Defendant also noted in the letter of denial that the claimed property use was for "[o]ffices used for paid consulting, financial and fund raising assistance to For Profit and Non-Profit Organizations[.]" (Ptf's Ex 6 at 1; Def's Ex A at 1.)
During the trial and in Defendant's Post Trial Memorandum, Defendant requested a late filing fee of $573.58 from Plaintiff in the event that the court finds in favor of Plaintiff. (Def's Post Trial Mem at 4.) The late filing fee request is based upon the second application having been received June 13, 2008, which was after the original due date of April 1, 2008. (See Def's Ex B at 1.)
D. Contentions of the Parties
Plaintiff contends that it is entitled to a charitable property tax exemption because it is a nonprofit organization and a charitable institution that provides a direct good or benefit to the public or community at large. (Ptf's Compl at 3-4; Ptf's Ltr at 2, Apr 27, 2010.) Defendant argues that Plaintiff is not entitled to a charitable property tax exemption because Plaintiff is merely a "pass-through" organization that "does not provide a direct good or benefit to the public *Page 6 
or community at large." (Def's Post Trial Mem at 2, 3.) Defendant also argues that Plaintiff is responsible for a late filing fee of $573.58. (Id. at 4.)
 II. ANALYSIS
The issue in this case is whether Plaintiff is entitled to a charitable property tax exemption under ORS 307.130.[2]
ORS 307.130 provides, in pertinent part:
 "(2) Upon compliance with ORS 307.162, the following property owned or being purchased by * * * incorporated * * * charitable * * * institutions shall be exempt from taxation:
 "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * charitable * * * work carried on by such institutions."
ORS 307.130. In order to decide whether Plaintiff qualifies for a charitable property tax exemption, the court must first determine whether Plaintiff is organized as a nonprofit corporation. Second, the court will determine whether Plaintiff separately accounts for funds and donations. Third, the court will use a three-part test to determine whether Plaintiff qualifies as "charitable institution" under ORS 307.130. Fourth, the court will determine whether the subject property was "actually and exclusively used" for charitable purposes under ORS 307.130. Finally, the court will determine whether Plaintiff owes a late filing fee to Defendant.
A. Whether Plaintiff is organized as a nonprofit corporation
To qualify for a charitable property tax exemption, Plaintiff must first be organized as a nonprofit corporation. Grantmakers forEduc. v. Multnomah County Assessor (Grantmakers), TC-MD No 021216E, WL 22119790 at *2 (Aug 21, 2003); OAR 150-307.130-(A)(1)(b). ORS 307.130(1)(c) defines "nonprofit corporation" as "a corporation that: (A) Is organized not for profit, pursuant to ORS chapter 65 or any predecessor of ORS chapter 65; or (B) Is organized *Page 7 
and operated as described under section 501(c) of the [IRC][.]" ORS 307.130. The Not for Profit Corporation Act of the State of Oregon is found in ORS chapter 65. See ORS 65.001-65.990. The articles of incorporation of Plaintiff state that Plaintiff is incorporated under the Not for Profit Corporation Act of the State of Oregon and state that the corporation is organized solely for charitable purposes. (Ptf's Ex 2 at 1; Def's Ex D at 1.) Plaintiff is also an approved IRC section 501(c)(3) nonprofit as required by ORS 307.130(1)(c)(B). (Ptf's Ex 4 at 1-2; Def's Ex C at 1-2.) The court finds that Plaintiff was a nonprofit corporation during the 2008-09 tax year as required byGrantmakers and defined in ORS 307.130(1)(c).
B. Separate accounting of funds and donations
In addition to being a "charitable institution," Plaintiff must "separately account[] for funds committed to charitable use, while not operating for the profit or private advantage of the taxpayer's founders and officials." SW Oregon Pub. Def Services v. Dept. ofRev. (SW Oregon), 312 Or 82, 91, 817 P2d 1292 (1991); see also
OAR 150-307.130-(A)(1)(c). For a corporation to maintain its charitable status, the organization must use any earned fees for charitable purposes. See Benton Co. v. Allen,170 Or 481, 486-87, 133 P2d 991 (1943) (citations omitted).
The financial summary of Plaintiff separates each income source and expense type into its own distinct category. (Ptf's Ex 8 at 1.) Plaintiff receives its income through direct public support, indirect public support, and program services. (Id.) In 2007, about 95 percent of the income of Plaintiff was from direct public support, less than one percent was from indirect public support, and about four percent was from program services. In 2008, about 83 percent of the income of Plaintiff was from direct public support and about 17 percent was from program services.[3] (Id.) Plaintiff pays expenses for program services, designated program services, *Page 8 
management and general expenses, and fundraising. (Id.) In 2007, cash donations made by Plaintiff to nonprofit clients were about 44 percent of the total expenses of Plaintiff. In 2008, cash donations made by Plaintiff to nonprofit clients were about 35 percent of the total expenses of Plaintiff.[4] (See id.)
Because the financial statements of Plaintiff break income and expenses into distinct charitable categories, the court finds that Plaintiff has separately accounted for funds committed to charitable use.
C. Whether Plaintiff is a "charitable institution" underORS 307.130(2)(a)
The next step in ascertaining whether Plaintiff meets the charitable property tax exemption requirements is to determine whether the nonprofit activities of Plaintiff qualify as charitable activities.See Grantmakers, TC-MD No 021216E at *2. The Oregon Supreme Court has stated:
 "[T]here are three elements to qualifying as a "charitable institution' under ORS 307.130: (1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving."
SW Oregon, 312 Or at 89. Plaintiff must meet these three elements in order for Plaintiff to qualify as a "charitable institution." SeeMazamas v. Dept. of Rev., 12 OTR 414, 415 (1993). The court must analyze whether Plaintiff met each prong of the SW Oregon test for the 2008-09 tax year. *Page 9 
1. Whether charity is the primary or sole object of Plaintiff
The first prong of the SW Oregon test is whether charity is the primary object of Plaintiff. SW Oregon, 312 Or at 89. When determining whether charity is the primary object of Plaintiff, "[t]he articles and bylaws of a corporation are prima facie evidence of the character of the corporation." Dove Lewis Mem. Emer. Vet.Clinic v. Dept. of Rev. (Dove Lewis),301 Or 423, 427, 723 P2d 320 (1986) (citations omitted). A charitable property tax exemption requires, in part, "that the organization's articles of incorporation or bylaws require that its assets be used for charitable purposes upon dissolution." The Enterprise for Employmentand Education v. Marion County Assessor (Enterprise), TC-MD No 070841C at 4, n 3 (citing OAR 150-307.130-(A)(2)).
Here, the articles of incorporation of Plaintiff state that Plaintiff is an Oregon nonprofit organization organized solely for charitable purposes. (See Ptf's Ex 2 at 1; Def's Ex D at 1.) The articles of incorporation and the bylaws of Plaintiff state that assets must be distributed to charitable organizations upon dissolution. (See
Ptf's Ex 2 at 1; Ptf's Ex 3 at 5; Def's Ex D at 1.)
Because Plaintiffs articles of incorporation and bylaws show, without ambiguity, that charity is the primary object of Plaintiff, the court finds that Plaintiff has met the first prong of the SW Oregon test.
2. Whether Plaintiff is performing in a manner that furthers itscharitable object
The second prong of the SW Oregon test is whether Plaintiff is performing in a manner that furthers its charitable object. See SWOregon, 312 Or at 89. To determine whether an organization is performing in a manner that furthers its charitable object, the court must assess the organization's individual activities. See GoodwillIndus. of the Columbia Willamette, Inc. v. Benton County Assessor(Goodwill), TC-MD 060676D, WL 1168679 at *4 (Apr 18, 2007);Hazelden Springbrook, Inc. v. Yamhill County Assessor, TC-MD 031037D, WL 1237628 at *4 *Page 10 
(May 11, 2004). The individual activities of the organization must contribute substantially to its charitable object. GermanApost. Christ. Church v. Dept. of Rev. (German Apost),279 Or 637, 641, 569 P2d 596 (1977) (citation omitted).[5]
Additionally, "[t]he activity conducted by the charitable institution must be for the direct good or benefit of the public or community at large. Public benefits must be the primary purpose rather than a by-product." Enterprise, TC-MD No 070841C at 4 (citation omitted; internal quotation marks omitted). An organization that exists chiefly for the convenience or benefit of its members is not a charitable institution. Id.
In testimony, Carl described the activities of Plaintiff as providing free or low-cost services to nonprofit clients, including event management, financial consulting, and development and marketing.(See Ptf's Ex 8 at 1.) He also stated that Plaintiff provides cash donations to nonprofit clients. (Id.) All of those nonprofit clients are IRC section 501(c)(3) "community organizations that serve people in need" as required by the bylaws of Plaintiff and all of those nonprofit clients received cash donations, rather than exclusively services, from Plaintiff. (Ptf's Ex 3 at 1; Ptf's Ex 8 at 1; Ptf's Ex 9 at 1.)
Defendant contends that Plaintiff does not meet the second prong of the SW Oregon test because Plaintiff is a "pass-through" organization that provides its services to other organizations, rather than to individual citizens of the community. (Def's Post Trial Mem at 3.) The primary case that Defendant relies upon is Grantmakers. In Grantmakers, the charitable exemption claimed by the taxpayer was denied because the court found that the taxpayer only directed its services to other organizations, most of which were members of the taxpayer. Grantmakers, WL 22119790 at *3. The services provided to members by the taxpayer in *Page 11 Grantmakers focused on enhancing the education of its members, primarily through programs and seminars. Id. at *1. Members of the taxpayer in Grantmakers were required to pay a fee for membership.Id.
Defendant's reliance on Grantmakers is in error. The Plaintiff here is distinguishable in three ways from the taxpayer inGrantmakers. First, Plaintiff does not have members. Second, Plaintiff provides specific cash donations to its nonprofit clients, rather than services only. Third, the services of Plaintiff that are provided to nonprofit clients are business services with a tangible benefit, including event management, financial consulting, and development and marketing. Plaintiff does not strive to help nonprofit clients solely through education; instead, it provides services normally provided by paid employees of organizations. The types of services provided by Plaintiff to its nonprofit clients provide them withcash by saving them money directly. Conversely, the services of the taxpayer in Grantmakers simply provided its members with theknowledge of how to save money by increasing efficiency. Although knowledge may be a by-product of the services Plaintiff provides to its nonprofit clients, its services are not primarily geared toward education.
Additionally, the nonprofit clients that benefit from the activities of Plaintiff are members of the community at large, not limited to members of Plaintiff. By providing cash to those organizations, Plaintiff is directly influencing the resources of the public and the community at large, and is thus directly benefitting the public through its activities. Cash is a direct benefit that can be used to meet almost any need of a nonprofit client's target group. It cannot be considered a by-product because it is a donation. Cash given to the Oregon War Veterans Association is used to meet the needs of veterans' families; cash given to the YWCA provides for the humanitarian needs of the women helped by that organization; and cash given to Family *Page 12 
Building Blocks directly funds the training programs provided to the public. Because the individual activities of Plaintiff contribute substantially to and further its charitable object, and because public benefits are the primary purpose of the activities of Plaintiff, the court finds that Plaintiff has met the second prong of the SWOregon test.
3. Whether the performance of Plaintiff involves a gift orgiving
The third prong of the SW Oregon test is whether the performance of Plaintiff involves a gift or giving. See SW Oregon,312 Or at 89. "The essence of charity is giving" and "the element of giving must be viewed from the perspective of the recipient[.]"Goodwill, WL 1168679 at *5 (citations omitted; internal quotation marks omitted). "In determining whether an organization is, by its conduct, charitable, the crucial consideration is the element of a gift or giving." DoveLewis, 301 Or at 428. Whether the performance of Plaintiff involves a gift or giving is based upon the overall activities of Plaintiff, not a portion thereof. See Mercy Medical Center, Inc. v. Dept. of Rev.(MercyMedical), 12 OTR 305, 307 (1992).
A nonprofit organization that provides services to recipients meets the element of gift or giving if its services are provided with no expectation that the organization would be paid or reimbursed for them. See Goodwill, WL 1168679 at *5 (citation omitted; internal quotation marks omitted). A nonprofit organization meets the element of gift or giving if the organization "receive[s] limited donations * * * [and] appl[ies] those donations and substantial volunteer labor" to its charitable services.See Rigas Maja, Inc. v. Dept. of Rev., 12 OTR 471, 475 (1993).
Here, Plaintiff provides nonprofit clients with services that are free (or nearly free) and with cash donations. Viewed from the recipients? perspectives, Plaintiff gives services that the nonprofit clients would normally have to pay for. Additionally, Plaintiff gives cash that the nonprofit clients would have to raise another way. Plaintiff ultimately receives payment for only *Page 13 
approximately five percent of the total services provided to nonprofit clients. The overall activities of Plaintiff involve a gift or giving. Plaintiff provides the vast majority of its services with "no expectation of compensation or renumeration." Goodwill, WL 1168679 at *5. Plaintiff receives limited cash donations and applies those donations and significant volunteer labor to its charitable services.
1. Collection of fees
"The fact that an organization charges a fee for its services does not necessarily invalidate its claimed status as charitable. It is a factor to be considered in the context of the organization's manner of operation." OAR 150-307.130-(A)(3)(d)(C); see also Dove Lewis,301 Or at 430-431 ("Although the fact that a corporation makes a profit or charges a fee for its services does not necessarily vitiate its claimed status as charitable, it is a factor to be considered in the context of the corporation's manner of operation" (citation omitted)). Because Plaintiff collects fees for services provided to nonprofit clients on a case-by-case basis, the court must assess whether those fees received disqualify Plaintiff from receiving a charitable property tax exemption. See Found. of Human Understanding v. Dept. ofRev., 301 Or 254, 259, n 5, 722 P2d 1 (1986). Three factors to consider when evaluating a nonprofit organization's fee collection schedule are: "(1) [W]hether the fee schedule is structured to cover all costs; (2) whether charges are made to all patrons, and * * * (3) whether patrons receive the same treatment irrespective of their ability to pay." Portland State Univ. Bookstore v. Multnomah CountyAssessor (Portland State), TC-MD No 060824C, WL 323496 at *6 (Jan 29, 2009) (citing Dove Lewis,301 Or at 428-31).[6] *Page 14 
According to the testimony of Carl, nonprofit clients of Plaintiff are not required to pay membership fees, initial fees for services, or fees for designated program services. Furthermore, Plaintiff provides the majority of its services for free and nonprofit clients only pay fees for services when their requests become "cost-prohibitive" to Plaintiff. Carl testified that requests are "cost-prohibitive" when Plaintiff has not received enough charitable donations from other sources to cover the specific requests of its nonprofit clients.
In addition to the relative rarity of charges, nonprofit clients are typically not billed for assessed charges until after they have raised money with the assistance of Plaintiff. Ultimately, Plaintiff receives payment for only five percent of its total services provided. The financial summary of Plaintiff shows that Plaintiff has received fees that amount to substantially less than the value of its cash donations and services provided to nonprofit clients. (Ptf's Ex 8 at 1.)
Plaintiff has met the factors outlined in Portland State for evaluating the fee collection schedule of a nonprofit organization: the fee schedule of Plaintiff is not structured to cover all costs, charges are not made to all patrons, and patrons receive the same treatment irrespective of their ability to pay. Because Plaintiff subsidized the expenses of its clients during the 2008-09 tax year, Plaintiff necessarily contributed fees received to its charitable purpose and did not operate for the profit or private advantage of its founders and officials. Considered in the context of Plaintiff's manner of operation, the court finds that the fees received by Plaintiff in the 2008-09 tax year do not disqualify Plaintiff from receiving a charitable property tax exemption.
2. Percentage of giving
In order to determine the level of giving of a nonprofit organization, the Oregon Supreme Court has evaluated the relationship of the amount of giving with the total revenue of the organization. SeeYMCA v. Dept. of Rev.(YMCA), 308 Or 644, 653-54, 784 P2d 1086 (1989). *Page 15 
The Supreme Court in YMCA declined to find a gift or giving when the total relationship of giving of the plaintiff to its revenue in the tax year at issue was less than four percent. YMCA, 308 Or at 654. The percentage of the cash giving of Plaintiff in relationship to its revenue in 2007 was 41.79 percent, and the percentage of thecash giving of Plaintiff in relationship to its revenue in 2008 was 39.3 percent.[7] (See Ptf's Ex 8 at 1.) The percentage of service giving of Plaintiff in relationship to its revenue in 2007 was 15.96 percent and the percentage of service giving of Plaintiff in relationship to its revenue in 2008 was 44.36 percent.[8]
(See Ptf's Ex 8 at 1.) Cumulatively, Plaintiff gave 58 percent (rounded) of its revenue in 2007 and 83 percent (rounded) of its revenue in 2008. In contrast to the plaintiff in YMCA, Plaintiff gave 83 percent of its revenue in the tax year at issue.
Because Plaintiff gave a significant percentage of its income during the tax year at issue to its nonprofit clients, the court finds that the performance of Plaintiff involves a gift or giving. The original charitable property tax exemption application of Plaintiff did not describe the cash giving element of its organization. However, testimony and exhibits provided at trial show that the charitable activity of Plaintiff was within the scope of ORS 307.130 during the 2008-09 tax year. After careful review of the facts established by Plaintiff through this appeal, the court finds that Plaintiff meets all three elements required by SW Oregon to qualify as a "charitable institution" during the 2008-09 tax year.
D. Whether Plaintiff used the subject property for its charitablework
ORS 307.130(2)(a) allows a property tax exemption only for "such real or personal property as is * * * actually and exclusively used in the * * * charitable * * * work" of the *Page 16 
organization. The charitable use of the property must be "the primary as distinguished from the incidental use." German Apost.,279 Or at 641, citing Mult. School of Bible v. Mult. Co.,218 Or 19, 36-37, 343 P2d 893 (1959). Additionally, the use of the property must "`substantially contribute' to achieving the organization's purposes." Mercy Medical,12 OTR at 308 (citations omitted).
Here, the property claimed as exempt by Plaintiff is used for the charitable work completed by Plaintiff; it is the primary office space for officers and other employees of Plaintiff and the primary place where the employees of Plaintiff meet with nonprofit clients.(See Ptf's Ex 1 at 1; Def's Ex B at 1.) Plaintiff uses its office space to write grants, plan events for nonprofit clients, and distribute donations. (Id.) Thus, Plaintiffs use of the subject property substantially contributes to its purpose of providing business services to non-profit clients.
Plaintiff has established that it is a non-profit corporation that separately accounts for funds and donations. Plaintiff has met the three prongs of the SW Oregon test and is therefore a charitable institution within the meaning of ORS 307.130. Finally, the subject property is "actually and exclusively" used for charitable purposes. Thus, Plaintiff is entitled to a charitable property tax exemption under ORS 307.130.
E. Whether Plaintiff owes a late filing fee to Defendant
During trial, O'Rourke, witness for Defendant, stated that Plaintiff might be responsible for a filing fee of $573.58 if the exemption is approved because the final charitable property tax exemption application of Plaintiff was received on June 13, 2008, and the initial deadline was April 1, 2008. (See Def's Ex B at 1; Ptf's Ex 1 at 1.) Defendant failed to raise any claim for fees in any of its pre-trial pleadings. Based on the evidence provided by the parties, the court finds any alleged late filing fee to be inappropriate. Two applications for the 2008-09 tax year were *Page 17 
sent to Defendant by Plaintiff; the first was received on April 1, 2008, and marked "timely by US Post Mark" by Defendant; the second was received on June 13, 2008, and marked "LATE FILED" and "New 2008-09" by Defendant.(See Ptf's Ex 1 at 1; Def's Ex B at 1.) There are only minor differences between the two applications: the address, phone number, and lease information provided by Plaintiff, which was updated on the June 13, 2008, form. (See Ptf's Ex 1 at 1; Def's Ex B at 1.) The court finds as a result that the original charitable property tax exemption application was received by Defendant within the time period required; the second filing merely added additional supporting details as an amendment to the original. Under these specific facts, no late filing fee should be assessed to Plaintiff.
 IV. CONCLUSION
It is the conclusion of the court that Plaintiff is a nonprofit charitable institution that meets the requirements of ORS 307.130 for a charitable property tax exemption. Now, therefore, *Page 18 
IT IS THE DECISION OF THIS COURT that Plaintiff is entitled to a charitable property tax exemption under ORS 307.130 for the 2008-09 tax year; and
IT IS FURTHER DECIDED that no late filing fee is due from Plaintiff.
Dated this ___ day of November 2010.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the date ofthe Decision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Jeffrey S. Mattsonon November 18, 2010. The Court filed and entered this documenton November 18, 2010.
[1] When discussing "designated program services," Carl made alternate references to "designated program services" and "directed giving." The court will refer to "designated program services" rather than "directed giving" because that is the term used in the financial statements of Plaintiff.
[2] All references to the Oregon Revised Statutes (ORS) are to the 2007 edition.
[3] In its financial summary for 2007, Plaintiff shows $807,388 in direct public support, $2,135 in indirect public support, and $37,176 in program services, for a total income of $846,699. For 2008, Plaintiff shows $994,753 in direct public support and $204,113 in program services, for total income of $1,198,866.
[4] In its financial summary for 2007, Plaintiff shows cash donations of $353,900 and total expenses of $810,348. For 2008, Plaintiff shows cash donations of $417,555 and total expenses of $1,179,199.
[5] German Apost concerns ORS 307.140, which provides a property tax exemption for religious organizations. Id. at 641. However, the court in German Apost treats ORS 307.130 as "an analogous statute" and discusses the requirements to qualify for exemption under ORS 307.130." Id. at 641-42.
[6] The Order on Cross Motions for Summary Judgment was adopted by the court in its decision, issued June 20, 2009. See Portland State Univ.Bookstore v. Multnomah County Assessor, TC-MD No 060824C, WL 1913203 (Jun 30, 2009).
[7] In 2007, total cash giving amounted to $353,900 and total revenue amounted to $846,699. In 2008, total cash giving amounted to $471,555 and total revenue amounted to $1,198,866. (Ptf's Ex 8 at 1.)
[8] In 2007, total service giving amounted to $135,159 and total revenue amounted to $846,699. In 2008, total service giving amounted to $531,921 and total revenue amounted to $1,198,866. (Ptf's Ex 8 at 1.)