DECISION
 I. INTRODUCTION
Plaintiff appeals the denial by Defendant of its application for a property tax exemption for the 2004-05 through 2010-11 " beyond" tax years. A telephone trial was held with Magistrate Jeffrey S. Mattson on November 2, 2010. A. John Ochsner (Ochsner), property owner, appeared and testified on behalf of Plaintiff. Brian A. Linke appeared and testified on behalf of Defendant. The record closed on December 13, 2010.
 II. STATEMENT OF FACTS
A. Property at issue, organization and activity ofPlaintiff
Ochsner owns Plaintiffs real property identified as Account 480483 (subject property.) (Ptf's Ex 4 at 1.) "The subject property is a 20[] acre rural property located approximately three miles north of Newberg, Oregon. The property is improved with a 1.5 story/basement dwelling, [a] * * * double-wide manufactured home, and two general purpose buildings." (Def's Ex A at 1.) The unimproved area of the property is otherwise forested. (Def's Ex K at 1.)
The subject property has two exterior areas surrounded by eight foot high chain-linked fencing, with another four feet of fencing connected on the top rail, creating a "T" configuration. *Page 2 
(Def's Ex A at 2.) The fencing configuration prevents animals from entering or escaping the areas. (Id.) The first enclosed area is approximately .25 acres and abuts directly to the house and garage. (Id.) This area includes three covered structures with electric blankets and automatic-filling water bowls. (Id.) Five feral cats and one tame cat inhabit that area. (Id.) The second fenced area is approximately .42 acres and is located just northwest of the dwelling. (Id.) Eight feral cats occupy that enclosure. (Id.) An underground water line and electrical conduit provide service to a small travel trailer and a covered litter box. (Id.)
In addition to caring for those 14 cats, Ochsner also shares his personal dwelling with 17 tame cats. (Id.) Ochsner has accepted eight of these cats from the public. (Id.) The others "have shown up anonymously on [Ochsner's] doorsteps over the years." (Ptf's Ltr at 2, Dec 10, 2010.)
As of 2007, Ochsner was a master's student studying Electrical and Computer Engineering. (Id. at 4.) His research included using "Biological Micro Electrical Mechanical Systems" to diagnose Feline Infectious Peritonitis (FIP), a disease that affects cats. (Id. at 3-4.) Ochsner states that the cause of death of many of the cats on the subject property appears to be FIP. (Id
. at 3.)
On January 7, 2010, Ochsner filed articles of incorporation with Oregon's Secretary of State, creating "CatLand" (Plaintiff). (Ptf's Ex 2; Def's Ex H.) Plaintiff is a nonprofit corporation, organized for "[p]ublic [b]enefit without members." (Id.) Ochsner appointed himself "President, CEO King" of Plaintiff. (Ptf's Ex 6 at 1; Def's Ex I.) Plaintiffs bylaws *Page 3 
state that its purpose is the "charitable, scientific and educational purpose of Animal Welfare Wildlife Conservation" and its activities include "providing food, water, shelter, and sanctuary to homeless animals and wildlife." (Ptf's Ex 12.)
Plaintiff is not currently accepting any stray or feral cats from the public, nor is it publicly advertising or promoting for volunteers to assist in the care of the cats. (Def's Ex A at 2; Ptf's Ltr at 2, Dec 10, 2010.)
B. Procedural History
Plaintiff submitted an Application for Real and Personal Property Tax Exemption on January 26, 2010, claiming that it was exempt as a "benevolent, charitable, [or] scientific institution[]." (Def's Ex B at 1.) The application was signed by Ochsner and dated June 19, 2004. Attached to the application was a lease for the subject property, dated June 19, 2004, naming Plaintiff as the lessee. (Def's Ex G at 1.) Plaintiff submitted an amended application on March 31, 2010. (Def's Ex L.)
After Defendant denied Plaintiff's first application on March 16, 2010, Plaintiff timely appealed to this court on April 1, 2010. See ORS 305.280.
C. Contentions of the parties
Plaintiff alleges that it is a charitable and scientific institution. It states that local governments spend "hundreds of millions of dollars every year controlling stray animals, from neighborhood cats defecating in sandboxes to feral cats living in urban areas." (Ptf's Ltr at 5, Dec 10, 2010.) In addition, Plaintiff argues that cats are not a part of the natural ecosystems of the United States, and their presence causes unnecessary suffering to wild animals. (Id.) Plaintiff argues that its act of giving is the food and medical treatment provided to the "stray and feral feline residents of CatLand." (Id. at 7.) By keeping the cats in a caged area, Plaintiff *Page 4 
argues that it is preventing the spread of rabies, plague, toxoplasmosis, and Lyme disease. (Id. at 5.) Further, it is Plaintiff's position that the entire 20 acres should be exempt because the area that is not used to house cats is a nature conserve open to the public year-round. (Id. at 2.) Plaintiff believes this use of the subject property to be charitable. (Id.)
Defendant challenges Plaintiff's status as a charitable institution. Specifically, Defendant claims: (1) Plaintiff does not relieve a significant government burden; (2) Plaintiff does not benefit the public or community at large; and (3) the cats are merely pets, not feral animals. (Def's Ex A at 4.) Defendant also challenges the validity of the lease and Plaintiff's organization as a nonprofit corporation. (Id. at 3.)
 III. ANALYSIS
A. Tax years at issue
Plaintiff applied for an ORS 307.130 exemption under ORS 307.112[1] for all tax years beginning in 2004. ORS 307.112 provides, in pertinent part:
 "(1) Real or personal property of a taxable owner held under lease * * * by an institution * * * granted exemption or the right to claim exemption for any of its property under * * * 307.130 * * * is exempt from taxation if:
 "(a) The property is used * * * in the manner, if any, required by law for the exemption of property owned [or] leased * * * by it[.]
 "* * * * *
 "(4)(a) The claim must be filed on or before April 1 preceding the tax year for which the exemption is claimed, except:
 "* * * * * *Page 5 
 "(B) If a late filing fee is paid in the manner provided in ORS 307.162 (2), * * * the claim may be filed on or before December 31 of the tax year for which exemption is first claimed."
(Emphasis added). Accordingly, ORS 307.162(2) provides:
 "(a) * * * a claim may be filed under this section:
 "*****
 "(B) * * * [o]n or before April 1 of the tax year for which the exemption is claimed, if * * * the claimant demonstrates good and sufficient cause for failing to file a timely claim."
(Emphasis added.)
Taken together, ORS 307.112 and 307.162 provide that an exemption claim for any given tax year beginning July 1 must be filed on or before April 1. A claim for exemption may be filed on or before December 31 of the tax year if a late filing fee is paid.
Plaintiff filed its application on January 26, 2010, seeking exemptions for tax years 2004 through 2011. For the 2010-11 tax year, Plaintiff's application was filed timely because the filing date was before the April 1, 2010, deadline.
Plaintiff may not, however, apply for refunds and exemptions for all years prior to the 2010-11 tax year. To qualify for an exemption as a charitable or scientific institution, that institution must beincorporated. ORS 307.130(2). ORS 65.051(1) provides that "[u]nless a delayed effective date is specified, the corporate existence begins when the articles of incorporation are reviewed, accepted and filed by the Secretary of State." Ochsner filed Plaintiff's articles of incorporation on January 7, 2010, registering it as a nonprofit organization. (Ptf's Ex 2; Def's Ex H.) There is no evidence a delayed effective date was requested nor would *Page 6 
that request result in a favorable outcome for Plaintiff. Because Plaintiff did not exist as a corporation until 2010, it may not apply for exemptions for any prior tax years.
Plaintiff's claims regarding tax years 2004-05 through 2009-10 are dismissed. The only remaining tax year at issue is 2010-11.
B. Plaintiff as a charitable institution
When examining exemption statutes, the guiding principle is that "[t]axation is the rule and exemption from taxation is the exception." Dove Lewis Mem. Emer. Vet. Clinic v. Dept. ofRev. (Dove Lewis),301 Or 423, 426, 723 P2d 320 (1986) (citation omitted). In its analysis, the court is guided by the rule that property tax exemption statutes are strictly but reasonably construed. SWOregon Pub. Def. Services v. Dept. of Rev. (SW Oregon),312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." North Harbour Corp. v. Dept. ofRev., 16 OTR 91, 95 (2002) (citation omitted). In exemption cases, the plaintiffs bear the burden of proof and must establish their case by a preponderance of the evidence. See ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. ofRevenue, 4 OTR 302, 312 (1971).
The issue before the court is whether Plaintiff qualifies for a charitable or scientific exemption under ORS 307.130 for the 2010-11 tax year. ORS 307.130 provides, in pertinent part:
 "(2) Upon compliance with ORS 307.162, the following property owned or being purchased by * * * incorporated * * * charitable and scientific institutions shall be exempt from taxation: *Page 7 
 "(a) Except as provided in ORS 748.414, only such real or personal property, or proportion thereof, as is actually and exclusively occupied or used in the * * * charitable or scientific work carried on by such institutions."
The Department of Revenue has adopted OAR 150-307.130, which establishes detailed criteria to be used in determining the qualification for property tax exemption under ORS 307.130. The first set of criteria looks to the organization of the entity. First, Plaintiff must be organized as a nonprofit organization. We Care Oregon v. Washington County Assessor
(We Care Oregon), TC-MD No 091226B, WL 4655319 at *4 (Nov 18, 2010); OAR 150-307.130-(A)(1)(b). Second, Plaintiff must separately account for funds and donations used for charitable purposes. We Care Oregon, WL 4655319 at *4; OAR 150-307.130-(A)(1)(c).
The Oregon Supreme Court, in SW Oregon, developed a three-part test to determine whether a nonprofit organization qualifies as a "charitable institution" under ORS 307.130, based on relevant case law and OAR 150-307.130-(A):
 "[T]here are three elements to qualifying as a `charitable institution' under ORS 307.130: (1) the organization must have charity as its primary, if not sole, object; (2) the organization must be performing in a manner that furthers its charitable object; and (3) the organization's performance must involve a gift or giving."
312 Or at 89.
If Plaintiff fails to meet any element of the three-part test, Plaintiff does not qualify for property tax exemption.
1. Charitable object
The first prong of the SW Oregon test asks whether the organization has "charity as its primary, if not sole, object."Id. In analyzing the first prong, courts have looked at the *Page 8 
organization's articles of incorporation and bylaws. See DoveLewis, 301 Or at 427 (citations omitted). Plaintiff's bylaws state that it is organized for the "charitable, scientific and educational purpose of Animal Welfare Wildlife Conservation." Although Plaintiff's bylaws are vague, Plaintiff's articles and bylaws are sufficient to satisfy the first element.
2. Performance of charitable object
The second prong of the SW Oregon test requires that the organization perform in a manner that furthers its purported charitable objective. SW Oregon, 312 Or at 89. To determine whether an organization is performing in a manner that furthers its charitable purpose, courts look at the individual activities of the organization. We Care Oregon, WL 4655319 at *5, citingGoodwill Indus. of the Columbia Willamette, Inc. v. Benton CountyAssessor, TC-MD No 060676D, WL 1168679 at *4 (Apr 18, 2007);Hazelden Springbrook, Inc. v. Yamhill County Assessor, TC-MD No 031037D, WL 1237628 at *4 (May 11, 2004). Further, the activities must "be for the direct good or benefit of the public or community at large. Public benefits must be the primary purpose rather than a by-product. An organization that is established primarily for the benefit of its members, is not a qualifying charity." OAR 150-307.130-(A)(3)(b).
In U.S. Atheists v. Multnomah County Assessor, a nonprofit organization leased a building that included a room designated as a meeting or community center. TC-MD No 0011083E, WL 34148929 at *1 (June 18, 2001). The organization wrote a newsletter, produced a television show, held meetings for both its members and the general public that offered lectures and classes, and maintained an internet website. Id. The court found that the organization submitted no evidence showing that its activities resulted in a direct good or benefit to the public or community at large.Id. at *3. "[A charitable institution's] dominant purpose *Page 9 
must be doing good to others rather than being organized for the convenience of those who use its services." Id.
(citation omitted; internal quotation marks omitted).
OAR 150-307.130-(A)(3)(b) provides further guidance. "For example, a rifle club formed primarily for the pleasure of its members also provides safety information and instruction. Since the club's primary purpose is not to provide a direct benefit to the public, its property is not exempt."
Although Plaintiff's bylaws state that it is formed for a charitable purpose and its activities include "providing food, water, shelter, and sanctuary to homeless animals and wildlife." Plaintiff is not currently accepting any stray or feral cats from the public, nor is it advertising or promoting its purported educational or scientific activities to the community at large.
As of 2007, Ochsner was a graduate student studying electrical and computer engineering. He was involved with research concerning the use of "Biological Micro Electrical Mechanical Systems" to diagnose Feline Infectious Peritonitis (FIP), a disease that affects cats. Ochsner stated that the cause of death of many of the cats on the subject property appears to be FIP. Plaintiff argues that by keeping the cats in a caged area, it is preventing the spread of rabies, plague, toxoplasmosis, and Lyme disease. The court agrees that while helping to cease the spread of disease benefits the public, it is merely a "by-product" of the benefit that the cats and Ochsner receive. OAR 150-307.130-(A)(3)(b). Plaintiff has not submitted evidence showing that preventing disease is his primary
purpose.
Even though public well-being may be one purpose, the court concludes that the public benefit is merely secondary to Ochsner's personal motives. Plaintiff's activities serve Ochsner's *Page 10 
personal pleasures of keeping pet cats and studying electrical engineering. Further, by not accepting cats or conducting advertising of any kind, Plaintiff is effectually secluding itself from the public. Plaintiff is not involved in activity that is primarily charitable, nor does it directly benefit the public or community and large. Plaintiff fails the second-part of the SWOregon test.
Having failed the second of the three-part test, Plaintiff does not qualify as a charitable organization and does not meet the statutory requirements of ORS 307.130.
C. Plaintiff as a scientific institution
Plaintiff also claims that it is exempt as a scientific institution. "[A] * * * scientific organization cannot qualify for the exemption unless a significant portion of its activities have a charitable objective." Rogue Gem v. Josephine CountyAssessor, 17 OTR 446, 451 (2003), citing Theatre West ofLincoln City, Ltd. v. Dept. of Rev.,319 Or 114, 117, 873 P2d 1083 (1994) (internal quotation marks omitted).
"In determining whether an organization is, by its conduct, charitable, the crucial consideration is the element of a gift or giving." Dove Lewis, 301 Or at 428. "[T]he essence of charity is giving." Corp of LDS v. Dept. of Rev.,14 OTR 244, 251 (1997) (emphasis in original). There is no evidence that Plaintiff's performance involves a "gift or giving." One indicator of giving is a relief of government burden. DoveLewis, 301 Or at 431. "[The] government must not only have the obligation to do what the taxpayer is doing, but the taxpayer also must relieve the government of some or all of the financial
burden of performing the charitable service." SW Oregon,312 Or at 90 (emphasis in original). Failure to relieve a government burden, however, does not disqualify an organization from an exemption. OAR 150-307.130-(A)(3)(c). Whether the activities of the Plaintiff involve a gift or giving is measured by the organization *Page 11 
overall, not to any specific part or operation. We CareOregon, WL 4655319 at *7, citing Mercy Medical Center,Inc. v. Dept. of Rev., 12 OTR 305, 307 (1992). "An element of gift and giving must be present in the organization's activities, relating to those it serves." OAR 150-307.130(3)(d). The element of giving must be viewed from the perspective of the recipient of the charitable giving. See SW Oregon, 312 Or at 91.
Plaintiff insists that it relieves a government burden and that its activities involve a gift or giving. Plaintiff argues that local governments spend "hundreds of millions of dollars every year controlling stray animals, from neighborhood cats defecating in sandboxes to feral cats living in urban areas." In addition, Plaintiff alleges that cats are not a part of the natural eco-system of the United States, and their presence causes unnecessary suffering to wild animals. Plaintiff has not proffered evidence showing that it has accepted new cats from the public since its creation. The evidence offered by Plaintiff indicates that its activities since its inception are simple: to house and feed 30 cats on the subject property and to supply water to wildlife. That activity does not qualify; the government has no "obligation" to gather feral animals and hold them indefinitely in caged areas. Plaintiff's own evidence describes how the widespread "trap-test-vaccinate-alter-and-release" program can be used "without endangering populations of birds and other wild animals." (Ptf's Ex 7.) Plaintiff has not met its burden of proof in showing that it relieves a government burden. Failure to do so, however, is not fatal to a claim of exemption.
The court, then, must examine the overall activities of Plaintiff, not parts thereof, from the perspective of the recipient of the charitable giving. The Oregon Tax Court has held that *Page 12 
charity involves "giving to the poor and needy."U.S. Atheists, WL 34148929 at *3, quoting Corp. of LDS,14 OTR at 249. This court has also held that, in order to qualify as a charitable institution, an organization must be for the "good or benefit of human beings." Care for Kids, Inc. v. Yamhill CountyAssessor (Care For Kids), TC-MD No 991297D at 7 (July 10, 2000).
In Care for Kids, the organization seeking exemption stated its purpose as the "`providing of care of children away from their homes' with the ancillary benefit of `enabling individuals to be gainfully employed.'" Id. Not only did the organization give a gift of education to the children, it directly gave to the public by providing childcare that would result in the opportunity for parents to remain employed.
Plaintiff argues that its gift or giving is the "food and medical treatment provided to the stray and feral feline residents of CatLand." (Ptf's Ltr at 7, Dec 10, 2010.) Plaintiff models itself after the Oregon Humane Society, a reputable charitable institution. The court disagrees that Plaintiff resembles the Humane Society, as this matter is in stark contrast to Care for Kids and Humane Societies nationwide. While the Humane Society provides gifts directly to the animals it protects, it also has the ancillary gift of allowing people to adopt pets at reduced prices, providing spay/neutering services, and providing services to members of the public that are no longer able to care for their pets. Similarly, the organization in Care for Kids provided gifts to the children, it also gave parents childcare so they could remain employed. Plaintiff gives gifts only to the cats on the subject property, not to the public as well. The public is not an additional recipient. Plaintiff has not proven that it provides a public benefit.
Because Plaintiff has not proven that it is a charitable organization or that a significant portion of its activities have a charitable purpose, it does not qualify as a scientific institution either. *Page 13 
 IV. CONCLUSION
Based on careful review of the evidence, the court concludes that Plaintiff is not a nonprofit charitable or scientific institution that meets the statutory requirements of ORS 307.130. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs appeal is denied.
Dated this ___ day of February 2011.
If you want to appeal Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on February 24, 2011. The Court filed and entered thisdocument on February 24, 2011.
[1] Unless otherwise noted, all references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009. *Page 1